ROMAN SERBESKU,

    Plaintiff,

     v.         Case No. 26-cv-0878-bhl

WENDY MOHR,
MICHAEL MILNER,
CHYNA WHITE,
NATHAN PASCHKE, and
TODD GILLINGHAM,

    Defendants.

## SCREENING ORDER

Plaintiff Roman Serbesku, who was formerly incarcerated at the Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Serbesku's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Serbesku has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A review of his petition reveals that he lacks the means to prepay the civil case filing fee. Therefore, Serbesku's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a

cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Serbesku asserts that, on November 4, 2022, before he was released from prison, he had surgery during which a bone from his tibia was grafted into his clavicle. As part of this surgery, "hook plating hardware" was installed. Surgical notes stated that the hardware was temporary and should be removed in about six months. During follow-up visits with the surgeon, the recommendation was that the hardware be removed. On June 1, 2023, the surgeon confirmed that the hardware should be removed within one month. Serbesku asserts that he repeatedly informed the health services unit that he was in pain and unable to sleep and that the surgeon had ordered removal of the hardware, but nothing was done.

Serbesku states that in July 2023 he began to submit health services requests asking when the removal would be scheduled. According to Serbesku, Defendants Michael Milner and Chyna White responded that the surgery was in the process of being scheduled, but these statements were false. On August 7, 2023, Serbesku learned from a nurse that there were no notes or referrals in his file directing that surgery be scheduled. Serbesku asserts that the nurse told him Defendant APNP Wendy Mohr stated that the hardware did not have to be removed because Serbesku was not experiencing any pain. Serbesku asserts that this statement was false—he had consistently

2

complained about pain and other uncomfortable symptoms related to the hardware. On August 10, 2023, Serbesku was referred to physical therapy where he was assessed by Nathan Paschke. Paschke reported that Serbesku's range of motion was within normal limits but that he had pain that limited his function. Dkt. No. 1-1 at 18-19.

On September 18, 2023, APNP Mohr submitted an inquiry to Dr. Ellen Obrien (who is not a Defendant) stating that she has a patient requesting the removal of surgical hardware but noting that she and the physical therapist question whether it needs to be removed. She noted that she spoke to the orthopedic clinic and was informed that the hardware "is not one they leave in permanently." She concludes by stating that "[p]atient is currently no[t] having any pain questioning the medical necessity of this." Dkt. No. 1-1 at 20. Serbesku again asserts that APNP Mohr's statement about the lack of pain was false. Serbesku states that APNP Mohr made these false statements after he started submitting complaints about her.

About a month later, on October 18, 2023, APNP Mohr submitted a Class III surgical request for removal of the hardware. According to Serbesku, APNP Mohr downplayed his symptoms and mischaracterized the surgeon's statements regarding the need to remove the hardware. Serbesku asserts that, because of her misleading narrative, the Class III committee denied the request and noted that he could have the hardware removed after his July 29, 2025 release date.

Serbesku asserts that he filed an inmate complaint about APNP Mohr's dishonesty, but Defendant Todd Gillingham rejected the inmate complaint. Serbesku states that he filed other inmate complaints, but Gillingham rejected or recommended dismissal of all of them.

On November 11, 2023, Serbesku submitted health services request documenting his complaints about APNP Mohr. Serbesku continued to submit health services requests about his pain. APNP Mohr finally prescribed pain medication on February 2, 2024. In March 2024, Serbesku began to be treated by Dr. Murphy, who resubmitted a request to have the hardware removed. According to Serbesku, Dr. Murphy accurately explained Serbesku's condition. The request was approved by the Class III committee eight days later. The hardware was removed in August 2024, more than a year after the surgeon recommended the hardware be removed.

## THE COURT'S ANALYSIS

Serbesku first asserts that his constitutional rights were violated when Defendants failed to adequately address his complaints of pain about the temporary hardware in his clavicle. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

Based on the foregoing standard, Sebesku states an Eighth Amendment medical care claim against APNP Mohr based on allegations that she ignored his complaints of pain, downplayed and mischaracterized his condition, and ignored his surgeon's recommendation regarding the hardware, which led to a significant delay in the temporary hardware being removed. He also states an Eighth Amendment medical care claim against Milner and White, who allegedly falsely stated that the removal surgery was in the process of being scheduled, which lulled Serbesku into a false belief that his needs were being addressed and thereby delayed his efforts to get the hardware removed. Serbesku may also proceed on state law medical negligence claims against these individuals.

Serbesku also asserts that APNP Mohr retaliated against him when she downplayed his condition and ignored his complaints after he started complaining about her treatment of him. To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Serbesku states a retaliation claim against APNP Mohr based on allegations that she sabotaged the request for removal surgery by including misleading or false information after Serbesku began to submit complaints about her treatment decisions.

He does not, however, state a retaliation claim against the two nurses who each responded to a single health services request shortly after the surgeon's recommended removal date.

4

According to Serbesku, the nurses responded to his requests with false information because of his "repeated protected inquiries about his medical care." But Serbesku provides no factual allegations suggesting that these nurses, who were simply performing the administrative duties of their job by triaging health services requests, even knew about his "repeated" inquiries, let alone that the content of their responses were motivated by those inquiries. As the Court explained above, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Serbesku also does not state a claim against Paschke, the physical therapist who evaluated Serbesku's range of motion and pain tolerance. According to Serbesku, Paschke mischaracterized Serbesku's movements, but the exhibits attached to the complaint, which are incorporated by reference, tell a different story. Paschke notes reflect an acknowledgement that pain was limiting Serbesku's function and that Serbesku was complaining of worsening discomfort. He also mentions the surgeon's stated intention to remove the hardware. Paschke expressed surprise at this intention given statements in a medical journal about the dangers associated with removing hardware. The Court cannot reasonably infer from Paschke's notes that he was deliberately indifferent to Serbesku's shoulder condition. He performed a thorough evaluation, accurately recorded Serbesku's subjective complaints of pain, and highlighted his concerns about another provider's recommendation. The mere fact that he may have disagreed or raised concerns with the surgeon's recommendation is not a basis to conclude he was deliberately indifferent. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). And, in any event, Paschke is not responsible for the allegedly delayed removal of the hardware as he was not the provider responsible for requesting removal of the hardware. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (holding that a defendant is liable for damages under §1983 only if he was personally responsible for the deprivation of a constitutional right).

Nor does Serbesku state a claim against Gillingham, the institution complaint examiner. First, "prisoners do not have a standalone constitutional right to an effective grievance procedure, [so] the alleged mishandling of his grievances was not itself a constitutional violation." *Walker v. Rowald*, No. 23-1398, 2023 WL 6818157, at *1 (7th Cir. Oct. 17, 2023) (citing *Grieveson v. Anderson*, 538 F.3d 763, 772 (7th Cir. 2008). Next, the mere fact that Gillingham did not resolve Serbesku's inmate complaints in the way he believed they should be resolved does not without more reasonably imply that Gillingham was deliberately indifferent to Serbesku's condition or that

5

he was retaliating against Serbesku. The Seventh Circuit has explained that "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules … along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Gillingham, who is not a medical professional, performed the duties of his role by enforcing the grievance procedures, investigating Serbesku's inmate complaints, and confirming that Serbesku was under the care of a provider. That is all the Constitution requires. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (holding that non-medical officials are entitled to "rely on the expertise of medical personnel" and "will generally be justified in believing that the prisoner is in capable hands."); *see also George v. Smith*, 507 F. 3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible," and resolving "an administrative complaint does not cause or contribute to the violation.").

Finally, Serbesku does not state a claim for intentional infliction of emotional distress. "To recover damages for intentional infliction of emotional distress, a plaintiff must show: 1) that the defendant's conduct was intentional, that is, the defendant behaved as he did for the purpose of causing emotional distress; 2) that the defendant's conduct was extreme and outrageous; 3) that defendant's conduct caused the injury; and 4) that the plaintiff suffered an extreme and disabling emotional response to the conduct." *Kennedy v. Children's Serv. Soc. of Wisconsin*, 17 F.3d 980, 986 (7th Cir. 1994). Serbesku was referred to an offsite specialist and physical therapist, had major surgery, had multiple follow-up appointments with repeated diagnostic tests, and was the topic of discussion amongst numerous providers regarding appropriate treatment. Although Serbesku did not receive the treatment he wanted as quickly as he wanted it, the Court cannot reasonably infer that Defendants behaved as they did for the purpose of causing him emotional distress. Serbesku believes they should have done more, but his dissatisfaction does not reasonably suggest that their conduct was "extreme or outrageous" or "a complete denial of [his] dignity." *Id.* at 986-87.

**IT IS THEREFORE ORDERED** that Serbesku's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Serbesku fails to state a claim against Nathan Paschke and Todd Gillingham, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Serbesku's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Wendy Mohr, Michael Milner, and Chyna White.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Wendy Mohr, Michael Milner, and Chyna White shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that Serbesku must submit the original document for each filing to the Court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Serbesku is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners and former prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Serbesku may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 29th day of May, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge